UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CAROL A. McRAE, individually and on
behalf of all similarly situated prospective
class members, *et al.*,

                              Plaintiffs,

    -against-                                    1:15-CV-0991 (LEK/TWD)

NEW YORK STATE THRUWAY
AUTHORITY, *et al.*,

                              Defendants.

_____

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

Plaintiffs Carol A. McRae, Lori Bucci, Ann D. Currier, Paul E. Provost, Kathleen Lacy, and John J. Mecca commenced a class action on behalf of all current and retired Managerial/Confidential ("MC") employees of the New York State Thruway Authority ("Authority") who worked for the Authority from July 1, 2008, to May 26, 2016. Dkt. No. 1 ("Complaint") ¶¶ 1, 11–18. Plaintiffs allege that the Authority and members of its board violated the Fifth and Fourteenth Amendments of the United States Constitution by depriving Plaintiffs of their earned salary increases without just compensation for use in the management of a public highway. Id. ¶¶ 100–22. Plaintiffs also allege state law claims for breach of contract, conversion, and violations of the New York State Constitution and New York Labor Law. Id. ¶¶ 123–49.

Presently pending before the Court is Defendants' Motion to Dismiss under the Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim. Dkt. Nos. 32 ("Motion"), 32-1

("Memorandum"), 36 ("Opposition"), 37 ("Reply"). For the following reasons, Defendants' Motion to Dismiss is granted.

## II.  BACKGROUND[1]

The Authority is a public corporation created by the New York State Authority Act. Compl. ¶ 2. New York delegated the management of the public highway system, "The Governor Thomas E. Dewey Thruway," to the Authority pursuant to New York Public Authorities Law section 353. Id. ¶ 23. The individual Defendants are current or former officers or board members of the Authority, including: Robert Megna (the "Executive Director"), Joanne M. Mahoney, Donna J. Luh, E. Virgil Conway, Richard N. Simberg, Donald Rice Jr., and Jose Holguin-Veras (collectively, the "Board"). Id. ¶¶ 4–10. The Board governs the Authority pursuant to the New York State Thruway Authority Act. Id. ¶ 24.

Defendants have the power to fix compensation pursuant to New York Public Authorities Law section 354(6) and New York Civil Service Law section 2(9). Id. ¶¶ 28, 32. Under New York Civil Service Law sections 200 to 214, Plaintiffs are not permitted to organize or collectively bargain on terms and conditions of employment. Id. ¶ 39. Plaintiffs attach the Authority's "Salary Manual," to their Complaint which states that, "[s]ince Managerial Confidential units (Units 0 and 6) do not have negotiated agreements, their salary increases are determined by the Authority/Corporation Board." Dkt. No. 1-2 ("Salary Manual") at 56.

---

[1] As this case is before the Court on a Motion to Dismiss for failure to state a claim, the allegations of the Complaint are accepted as true and form the basis for this section. See Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 408 (2d Cir. 2000); see also Matson v. Bd. of Educ., 631 F.3d 57, 72 (2d Cir. 2011) (noting that, in addressing a motion to dismiss, a court must view a plaintiff's factual allegations "in a light most favorable to the plaintiff and draw[] all reasonable inferences in her favor").

Similarly, wages are "set by resolution passed by The Authority's Board and thereafter memorialized in an Executive Instruction or Executive Bulletin, signed by the Executive Director." Compl. ¶ 40. Plaintiffs simultaneously allege that wages are also paid "pursuant to The Authority's Salary Manual" and a "Salary Grade System." Id. ¶¶ 41–42.[2]

### A. Salary Manual

The Salary Manual is "a reference guide for the employees in the Bureau of Personnel and the Payroll Unit within the Office of Accounting and Disbursements." Salary Manual at 2. The Salary Manual explains and defines terms that Plaintiffs reference in the Complaint, including "Step Advances" and "Longevity Payments." Compl. ¶¶ 41–42; Salary Manual at 39, 48–49. Step Advances and Longevity Payments are automatic salary increases given to employees based on completion of a term of satisfactory service. Salary Manual at 39, 48.[3] Employees "must have a satisfactory performance rating for the applicable rating period . . . before they are advanced to the next step." Id. at 39. Any "unsatisfactory service" does not count as qualifying time, and any period of unqualified time delays advancement. Id. at 39, 48. Delays in advancement create variation among payment amounts awarded to employees. Id. at 48–49.

Retired employees may take part in the New York State Retirement System. Compl. ¶ 43. The "retirement benefits are based in part on the employee's three (3) highest salaries over a consecutive three (3) to five (5) year period." Id. ¶ 45.

---

[2] Plaintiffs later argue that salaries are set through the Authority's 2008 Resolution. Opp'n at 2.
[3] The difference between the two raises is that Longevity Payments replace Step Advancements at pay grade sixteen and above. Salary Manual at 39, 48–49.

### B. Resolutions

Plaintiffs allege that the Authority created "a legally binding contract with its MC employees" for several reasons. Id. ¶ 51. On November 19, 2008, the Board approved Resolution 5707, which increased base salary and the salary schedule of MC employees by 3% retroactively to July 1, 2008, and prospectively increased salaries by 3% in July 2009 and 2010, and 4% in July 2011. Id. ¶¶ 48–51; Dkt. Nos. 1-4 ("2008 Resolution"), 1-5 ("2008 Bulletin"), 1-6 ("Salary Schedules"). On December 11, 2008, the Board executed an Executive Instruction "contracting for pay increases for MC employees for 2008, 2009, 2010 and 2011." Compl. ¶ 49. The Authority then distributed written salary schedules to MC employees. Id. ¶ 50. However, in the 2008 Resolution reserved to the Authority the right to "continue to monitor and review this issue during the next fiscal year." 2008 Resolution at 4.

In June 2009, Board Resolution 5764 gave the Executive Director the power to authorize deferment of payment of salary increases, step advances, and longevity payments. Compl. ¶ 56. The deferment included the pay periods of July 1, 2009, through June 30, 2010, and the commensurate 2009 adjustment of the MC salary schedule. Id. The deferment was authorized "until such time as [the Executive Director] determines appropriate." Id.; Dkt. No. 1-7 ("2009 Resolution/Bulletin") at 3. A bulletin on June 30, 2009, showed that the payments of salary increases, step advancements, and longevity payments were "deferred until further notice." 2009 Resolution/Bulletin at 2. A former director informed Plaintiffs that a former executive director and board chairman "specifically requested the 'deferred' language." Compl. ¶ 60.

In 2010, a bulletin deferred general salary increases until further notice but granted step advances and longevity payments to otherwise eligible MC employees. Dkt. No. 1-8 ("2010

4

Resolution/Bulletin") at 2. In 2011, a bulletin deferred the salary increases, step advances, and longevity payments "until further notice" or until deemed appropriate by the Executive Director. Dkt. No. 1-9 ("2011 Resolution/Bulletin") at 2–3.

The Authority "admitted to one or more MC employees that The Authority would have to eventually pay the . . . previously earned wages per the November 19, 2008 Board Resolution and December 11, 2008 Executive Instruction." Compl. ¶ 61. Since 2009, MC employees were "repeatedly promised and reassured that their previously earned wage payment would eventually be paid." Id. ¶ 62.

On May 26, 2015, the Board rescinded the general salary increases first approved by the Board in 2008 and instead instituted a four percent salary increase. Id. ¶ 70; Dkt. No. 1-10 ("2015 Bulletin") at 2. The longevity payments and step advancements were not rescinded by the Board. 2015 Bulletin at 2. Instead, a bulletin stated that administrative steps would be taken to assist "employees impacted by previous deferments of step advancements and longevity payments," to correct MC anniversary dates, and to ensure the MC employees received the step advancements or longevity payments. Id. The bulletin also reserved the right to withhold all salary increases if there was a documented record of "unsatisfactory job performance or other factors that the Executive Director deems relevant during the applicable rating period." Id.

### C. Procedural History

Plaintiffs filed the instant action on August 14, 2015. Compl. Plaintiffs asserted causes of action for violations of the Takings Clause of the Fifth Amendment and substantive and procedural due process under Fourteenth Amendment. Compl. ¶¶ 100–22. Plaintiffs also bring

supplemental state law claims including breach of contract, conversion, wage theft, and violations of article I, section 7 of the New York State Constitution. Id. ¶¶ 123–49.

## III. LEGAL STANDARD

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Fed. R. Civ. P. 12. The plausibility standard requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556. On a motion to dismiss, the Court should accept "as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor." Biro v. Conde Nast, 807 F.3d 541, 544 (2d Cir. 2015). Although Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Notably, "threadbare recitals of elements of a cause of action, supported by mere legal conclusory statements, do not suffice." Id. at 663. Further, a complaint may be dismissed pursuant to Rule 12(b)(6) where a plaintiff has clearly not alleged and cannot allege an essential element of a claim. See Lennon v. Seaman, 63 F. Supp. 2d 428, 434 (S.D.N.Y. 1999) (finding that, where plaintiffs' complaint lacks an essential element, dismissal of that claim is proper).

## IV. DISCUSSION

Plaintiffs assert the following constitutional claims related to their salary deferments under 42 U.S.C. § 1983: (1) violation of procedural due process under the Fourteenth Amendment, (2) violation of substantive due process under Fourteenth Amendment, and

6

(3) violation of the Takings Clause of the Fifth Amendment. Compl. ¶¶ 100–22. Plaintiffs additionally bring state law claims for wage theft pursuant to New York Labor Law § 190 *et seq.*, breach of contract, conversion, and violation of article I, section 7 of the New York State Constitution, which requires compensation for takings of private property. Id. ¶¶ 123–49.

Defendants focus on Plaintiffs' failure to plead a property interest that is constitutionally protected under the Fifth or Fourteenth Amendments. Mem. at 5–16. Plaintiffs argue that they had "a unilateral expectation that they would receive the promised salary and, thus, had a constitutionally protected property interest in these previously earned wages." Opp'n at 1–2. They also allege that they had a legitimate claim of entitlement to (1) "the earned wages that were promised and subsequently earned from 2009–2011" and (2) "the contract which was created by the actions of the Board, the Executive Director and the M/C employees." Id. at 8.

### A. Materials Outside the Pleadings

Generally, on a Rule 12(b)(6) motion, if "matters outside of the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47–48 (2d Cir. 1991) (citing Fed. R. Civ. P. 12(d)). However, "[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007); see also Fed. R. Civ. P. 10(c). Further, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and is *integral to the complaint*' may by considered." Roth, 489 F.3d 499, 509 (quoting Cortec, 949 F.2d at 47). However, when considering documents not attached or referenced, there must be "no material disputed issue of fact regarding the relevance of the

7

document." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (quoting Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006)).

The salary manual, salary schedule, resolutions, and bulletins are directly attached to Plaintiffs' complaint. Dkt. Nos. 1-1 to -10. The Court therefore finds the salary manual, salary schedule, resolutions, and bulletins are part of the pleading and may be considered. Defendants argue that Plaintiffs' salary schedules are pulled from an employee handbook containing clear disclaimers that rebut Plaintiffs' claims. Mem. at 3, Dkt. Nos. 32-2 ("Declaration"), 32-3 ("Handbook").[4] In response, Plaintiffs argue that the salaries were set by resolution, not by an employee handbook. Opp'n at 2. While the Court may illustratively refer to the employee handbook, the Court will consider only Plaintiffs' attachments in determining the instant matter.

### B. Procedural Due Process

To state a claim for a due process violation under the Fourteenth Amendment, a two-step inquiry must be applied: "(1) whether [the plaintiff] possessed a liberty or property interest and, if so, (2) what process . . . was due before [they] could be deprived of that interest." Ciambriello v. County of Nassau, 292 F.3d 307, 313 (2d Cir. 2002) (citing Green v. Bauvi, 46 F.3d 189, 194 (2d Cir. 1995)).

Therefore, a threshold issue is whether Plaintiffs possessed a constitutionally protected property interest. A property interest is typically derived from "existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972). To establish

---

[4] The handbook contains the following disclaimer: "The Authority/Corporation reserves the right to unilaterally change, modify, amend, add or delete provisions contained in this Handbook at any time. This Handbook does not create any contractual rights, express or implied, and is only intended for general informational purposes." Mem. at 3

8

that Plaintiffs possessed a property interest, they must have "a legitimate claim of entitlement to it." Id. A mere "abstract need or desire" or "unilateral expectation" will not suffice to impart a property interest. Id.[5]

    *i. Salary Increases*

It is well established that in most instances there is "no legitimate claim of entitlement to a particular salary increase." N.Y.C. Managerial Employees Ass'n v. Dinkins, 807 F. Supp. 958, 973 (S.D.N.Y. 1992); see Leventhal v. Knapek, 266 F.3d 64, 77 (2d Cir. 2001) ("[d]iscretionary salary increase[s] [are] not a form of property protected by the Constitution against deprivation without due process of law."); see also Am. Fed'n of State, Cty & Mun. Emp. Local 264 v. Tobe, No. 04-CV-753S, 2011 WL 6329908, at *6–7 (W.D.N.Y. Dec. 19, 2011) (granting summary judgment because increases are not protected under the Due Process Clause).

In certain circumstances, an exception to this rule may exist when the compensation increases for employees are discretionary but "the discretion is so restricted as to virtually assure conferral of the benefit." Levine v. Paterson, No. 10-CV-1007, 2011 WL 4593739, at *6–7 (N.D.N.Y. Sept. 30, 2011) (quoting Bernheim v. Litt, 79 F.3d 318, 323 (2d Cir. 1996)). If a salary increase may be withheld for "substandard job performance" however, the salary increase does not qualify as a property interest. Id. (quoting Leventhal, 266 F.3d at 77).

---

Plaintiffs misinterpret the rule from Roth, saying that "Plaintiffs must have a unilateral expectation—not an abstract desire—of the benefit." Opp'n. at 8. However, an individual must have "*more* than a unilateral expectation" in order to create a property interest. Roth, 408 U.S. at 577 (emphasis added).

Plaintiffs argue that they have a "legitimate claim of entitlement to wages previously earned under the 2009–2011 salary increases."[6] Opp'n at 8. Defendants argue that it is a "government employer's right to make unilateral adverse changes in the compensation of M/C employees" and point to Levine, where the constitutional rights of MC employees were not violated when the employees were denied previously authorized salary increases. Mem. at 7. Plaintiffs attempt to distinguish their case by stating that, unlike in Levine, "[n]o such discretionary language exists" concerning salary increases within the resolutions, executive instructions, or salary schedules. Opp'n at 9–10.

For the general salary increases, Defendants have the power to fix compensation, and thus have discretion to set compensation, pursuant to Public Authorities Law section 345(6) and Civil Service Law section 2(9). Compl. ¶¶ 28, 32. Second, the step advances and longevity payments are not virtually assured because both salary increases are contingent on satisfactory performance ratings. Salary Manual at 39–40, 48–49. Notably, any period of unsatisfactory service will cause an employee to remain at their prior salary until the next step advancement is received. Id. at 40. Therefore, even salary increases based on years employed are subject to delays based on discretionary assessments of the employees' performance.

The resolutions and executive bulletins reserve similar discretion. For instance, in the 2008 Resolution, the Board resolved to "continue to monitor and review this issue during the fiscal year." 2008 Resolution at 4. The bulletin that broadcasted the resolution does not refer to a promise, but merely states that the Board "approved the . . . compensation package." Id. at 2.

---

[6] Plaintiffs define the term "earned wages" merely as "salary increases," which presumably includes longevity payments and step advancements in addition to general salary increases. Opp'n at 8.

The 2009 Resolution gave the Executive Director power to authorize deferral of payment of salary increases, step advances, and longevity payments. Compl. ¶ 57; 2009 Resolution/Bulletin at 2–3. In the resolutions adopted in 2009, 2010, and 2011, the deferment, including the commensurate salary schedule, was authorized to continue "until such time as [the Executive Director] determines appropriate." 2009 Resolution/Bulletin at 3; 2010 Resolution/Bulletin at 3, 2011 Resolution/Bulletin at 3. In the 2009, 2010, and 2011 executive bulletins, the increases were deferred "until further notice." 2009 Resolution/Bulletin at 2; 2010 Resolution/Bulletin at 2; 2011 Resolution/Bulletin at 2. Furthermore, the 2015 bulletin reiterated that salary increases could still be withheld if the employees had a documented record of "unsatisfactory job performance or other factors that the Executive Director deems relevant during the applicable rating period." 2015 Bulletin at 2.

The Court therefore disagrees with Plaintiffs' assertion that Defendants' choice of language in the salary manual, resolutions, and bulletins precluded Defendants from exercising discretion in Plaintiffs' salary increases so as to virtually confer a benefit. Indeed, it is evident from Plaintiffs' own attached submissions, referred to liberally in the Complaint, that the Defendants' retained clear discretion over Plaintiffs' compensation. As a result, Plaintiffs have no constitutionally protected property interest in the salary increases.

      ii. *Contract Right*

Plaintiffs argue they had a constitutionally protected contract right. Compl. ¶¶ 48–51, 60–61. Defendants argue that no express or implied contract exists or is enforceable. Memo at 10–11.

11

Whether or not a contract actually exists, "it is relatively clear that a contract dispute, in and of itself, is not sufficient to give rise to a cause of action under section 1983." Walentas v. Lipper, 862 F.2d 414, 418 (2d Cir. 1988) (citing S & D Maint. Co. v. Goldin, 844 F.2d 962, 966 (2d Cir. 1988)); see also Tobe, 2011 WL 6329908, at *6 ("Although a public contract can confer a protectable benefit, not every contract does so"). Notably, the Second Circuit declined to "recognize a constitutionally protected property interest in a claim for an alleged contractual increase," even for collective bargaining agreements. S & D Maint. Co., 844 F.2d at 967.

### a. Express Contract

Plaintiffs argue that an express "legally binding contract" was created through the approval of the 2008 Resolution, the execution and communication of the 2008 Bulletin, and the distribution of salary schedules. Compl. ¶¶ 48–51; Opp'n at 11–12. Defendants argue that the resolutions were unilateral and created no property interest. Mem. at 10; Reply at 4.

The Supreme Court has recognized a presumption that certain legislative acts, like municipal resolutions, do not create a private contractual or vested right but "merely declare[] a policy to be pursued until the legislature shall ordain otherwise." Dodge v. Bd. of Educ., 302 U.S. 74, 79 (1937); see also Lawrence v. Town of Irondequoit, 246 F. Supp. 2d 150, 180 (W.D.N.Y. 2002) (quoting Aeneas McDonald Police Benevolent Ass'n v. City of Geneva, 703 N.E. 745 (N.Y. 1998)) ("[A] municipal resolution alone is 'a unilateral action that is temporary in nature and, thus, it does not create any vested contractual rights.'") Instead, municipal resolutions have been held to be "non-binding legislative action." Flaherty v. Giambra, No. 02-CV-243, 2002 WL 31017414, at *3 (W.D.N.Y. 2002) (citing White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1062 (2d Cir. 1993)). Most importantly, "an interest that state law

12

permits to be terminated at the whim of another person is not a property right that is protected by the Due Process Clause." White Plains, 991 F.2d at 1062.

Here, Plaintiffs' interest in a salary increase is predicated on the 2008 Resolution. Opp'n at 2. State law gives Defendants the power to fix Plaintiffs' compensation. N.Y. Civ. Serv. Law §§ 200–214. State law also limits Plaintiffs right to contract because it denies them the right to collectively bargain. N.Y. Pub. Auth. Law §§ 350–388. The 2008 Resolution itself reserved to the Authority the right to "continue to monitor and review [the salary increases] during the next fiscal year." 2008 Resolution at 4. In keeping with this, the Authority was permitted by state law to terminate the 2008 Resolution and subsequent resolutions. Therefore, no property interest is created through the resolutions or the corresponding bulletins.

Second, concerning the distribution of salary schedules in the salary manual, it has been held that "[r]outinely issued employee manuals, handbooks, and policy statements should not be converted into binding employment agreements." Rumsey v. Ne. Health, Inc., 89 F. Supp. 3d 316, 341 (N.D.N.Y. 2015), aff'd, 634 F. App'x 318 (2d Cir. 2016) (alteration in original) (quoting Lobosco v. N.Y. Tel. Co./NYNEX, 751 N.E.2d 462 (N.Y. 2001)). Additionally, if an employee relies on a provision in a manual to argue the creation of a promise, they must also be held to disclaimers contained within the same manual. Bongat v. Fairview Nursing Care Ctr. Inc., 341 F. Supp. 2d 181,188 (E.D.N.Y. 2004).

Plaintiffs present the distribution of the salary schedules in the salary manual as a vehicle designed to give notice to Plaintiffs of the terms of a salary schedule set by the Board. Opp'n at 15. However, the salary schedules distributed to Plaintiffs are incorporated into the Salary Manual. Compl. ¶ 50. The Salary Manual specifically reserved Defendants' right to determine

salary increases, noted that Plaintiffs "do not have negotiated agreements", and termed the manual "a *reference* guide." Salary Manual at 2, 56 (emphasis added). As discussed, language in the schedules, resolutions, and bulletins clearly evidenced that compensation was subject to the employer's discretion. Therefore, the salary schedules do not confer a legitimate entitlement to a property interest.

### b. Implied Contract

The Plaintiffs allege, in the alternative to an express contract, that an implied contract was created through the 2008 Resolution, 2008 Bulletin, and Defendants' reassurances from 2009–2011 concerning "previously earned wages."

A legitimate claim of entitlement can be created within a contractual dispute; however, these claims are limited to circumstances like welfare benefits, tenure, or social security benefits Am. Fed'n of State, Cty & Mun. Emp. Local 264 , 2011 WL 6329908, at *6. The exception applies primarily to "revocation of a status . . . characterized by a quality of either extreme dependence . . . . permanence . . . or both." Id. Nonetheless, a property interest has been found within an implied contract only where a plaintiff's interest in the position was "*more* than merely financial" and of "significant professional value" and, additionally, where there was significant variation of the employer's historical practices and policies. Ezekwo v. N.Y.C. Health & Hosps. Corp., 940 F.2d 775, 783 (2d Cir. 1991) (emphasis added); see Bheemarao v. City of New York, 141 F. Supp. 2d 446, 450 (S.D.N.Y. 2001) (noting that even in the context of promotions, a property interest is not established in an implied contract unless the promotion virtually assured by policies and practices). Since Plaintiffs' arguments are premised on purely a

financial interest in salary increases, Plaintiffs' implied contract right claim does not rise to the level of a protected property interest.

Overall, the Court finds that Plaintiffs allege no claim of entitlement to a property right through their "previously earned wages," retirement benefits, or through an express or implied contract right.[7] Therefore, Plaintiffs' procedural due process claims are dismissed.

### C. Substantive Due Process

Substantive due process claims also require a constitutionally protected property interest. Plaintiffs' substantive due process claims fail because, as discussed above, they have no property interest in the salary increases. Even if a property interest were to be found, Plaintiffs allegations of substantive due process violation would still fail because Plaintiffs make an insufficient showing of egregious behavior. Compl. ¶¶ 100–07.

In general, "[f]or a substantive due process claim to survive a Rule 12(b)(6) dismissal motion, it must allege governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Velez v. Levy, 401 F.3d 75, 93 (2d Cir. 2005) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)). The violations must "constitute a gross abuse of governmental authority" and substantive due process "does not

---

[7] Since no legitimate claim of entitlement to the raises exists, and the claim of entitlement to retirement benefit was predicated on a claim of entitlement to higher salaries used to calculate the benefits, Compl. ¶¶ 46–47, it logically follows that no legitimate claim of entitlement to higher retirement benefits exists. See Local 342, Long Island Pub. Serv. Employees, UMD, ILA, AFL-CIO v. Town Bd., 31 F.3d 1191, 1194 (2d Cir. 1994) (holding that, to state a claim, a plaintiff must "first identify a property right, second show that the state has deprived [the plaintiff] of *that* right, and third show that the deprivation was effected without due process" (emphasis in original) (quoting Mehta v. Surles, 905 F.2d 595, 598 (2d Cir. 1990)). Additionally, the Court notes that even if a property interest was found in the longevity payment and step advancements, the second element of the Fourteenth and Fifth Amendment would fail since the longevity payments and step advancements were not rescinded along with the general salary increases in the 2015 Resolution. Compl. ¶ 70; 2015 Bulletin at 2.

forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason [is] correctable in a state court lawsuit." Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999). Furthermore, the Second Circuit has ruled that, in cases where "[w]hat is allegedly shocking about what the defendants did is . . . their motive to deprive [a plaintiff] of liberty without procedural due process," substantive due process allegations are either subsumed into more particular procedural due process allegations or must be dismissed. Velez, 401 F.3d at 93–94.

The totality of Plaintiffs' allegations are that Defendants' "conduct was arbitrary and capricious," "willful and done in bad faith," and "shock[ed] the conscience." Compl. ¶¶ 113–18. The conduct, presumably, is the rescission of the general salary increases. These conclusory allegations are an insufficient showing of egregious behavior and do not evidence an action that would not be correctable in state court. Therefore, Plaintiffs' Fourteenth Amendment substantive due process claims are dismissed.

**D. Takings**

The Takings Clause of the Fifth Amendment applies to the states through the Fourteenth Amendment, and provides that no "private property [shall] be taken for public use, without just compensation." U.S. Const. amend. V; Kelo v. Cty of New London, 545 U.S. 469, 496 (2005). To state such a claim, Plaintiffs "must demonstrate: (1) that they have a property interest protected by the Fifth Amendment, (2) that they were deprived of that [property] interest by the government for public use, and (3) that they were not afforded just compensation." Ganci v. N.Y.C. Transit Auth., 420 F. Supp. 2d 190, 195 (S.D.N.Y.), aff'd, 163 F. App'x 7 (2d Cir. 2005). As discussed at length, Plaintiffs have no property interest and therefore fail the first element of a

takings claim. However, even if Plaintiffs had a protected property interest, Plaintiffs' argument construing the rescission of general salary increases as a taking would also fail.

Under the Takings Clause of the Fifth Amendment the rescission of contractually guaranteed wage increases is considered a regulatory taking. Buffalo Teachers Federation v. Tobe, 464 F.3d 362, 374 (2d Cir. 2006), (citing Penn Cent. Transp. Co v. City of New York, 438 U.S. 104, 124 (1978)). Three factors are weighed to determine whether interference with property rises to the level of a regulatory taking: "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." Id. at 375 (quoting Connolly v. Pension Ben. Guar. Corp., 475 U.S. 211, 224–25 (1986)). "[A] party challenging governmental action as an unconstitutional taking bears a substantial burden." Ganci, 420 F. Supp. 2d at 195 (quoting Eastern Enterprises v. Apfel, 524 U.S. 498, 523 (1998)).

Wage freezes have been found to meet none of the factors of the heavy burden necessary to establish a regulatory taking when (1) the economic impact is small since plaintiffs continue to receive the older salary; (2) the interference with investment back expectations is minimal since it is "a negative restriction rather than an affirmative exploitation by the state;" and (3) the nature of the governmental action arises from a public program—which the state has a right to initiate and regulate—and burdens the plaintiffs in order to promote the common good of fiscal stability. Buffalo Teachers Federation, 464 F.3d 362, 375–76 (citing Connolly, 475 U.S. at 225).

Plaintiffs here continued to receive the same salary they had received prior to the deferment, making the economic impact minimal. Compl. ¶ 72. Second, the interference with distinct investment-backed expectations was nonexistent since the rescission of the wage

17

increases was a negative restriction on general salary increases rather than an affirmative exploitation by removing previously earned payments. Third, the Authority is part of a public program to maintain a highway, Compl. ¶¶ 2, 23, and the Authority has the power to regulate the compensation of its employees, id. ¶ 32. The Authority referenced New York as being in a "dire fiscal situation," 2008 Resolution at 2, and Board members expressed that they wished they had the funds to institute the salary increases as originally scheduled. 2009 Resolution/Bulletin at 3. The Court concludes that the nature of the governmental action was an adjustment that the Authority had the power to impose and, while the adjustment undoubtably burdened Plaintiffs, it was enacted for the common good of fiscal stability.

As such, neither the wage freezes of the longevity payments and step advancements nor the rescission of the general salary increases rise to the level of a taking.

### E. State Law Claims

The Court's decision to exercise supplemental jurisdiction over state law claims after "dismissing every claim over which it had original jurisdiction is purely discretionary." Carlsbad Tech, Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009); see also 28 U.S.C. § 1367(c)(3). Generally, in the interest of "judicial economy, convenience, fairness, and comity," where all of the federal claims are dismissed before trial, the balance of factors will weigh against exercising supplemental jurisdiction over any remaining state law claims. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).

First, the Court notes that all federal claims in this action have been dismissed fairly early

in the litigation process. Second, the instant case is not related to any other federal civil cases.[8] Finally, Plaintiffs' remaining claims, if any, are a matter of state law and therefore would be better brought through the state court system. Compl. ¶¶ 123–49. Therefore, the Court declines to extend supplemental jurisdiction over Plaintiffs' state law claims.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion to Dismiss (Dkt. No. 32) is **GRANTED**; and it is further

**ORDERED**, that Plaintiffs' Complaint (Dkt. No. 1) is **DISMISSED**; and it is further;

**ORDERED**, that Plaintiffs' federal claims are **DISMISSED with prejudice**; and it is further

**ORDERED**, that Plaintiffs' state law breach of contract, conversion, and wage theft claims are **DISMISSED without prejudice to being refiled in state court**; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   August 05, 2016
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge

---

[8] Defendants argued that the instant matter was related to No. 13-CV-918, No. 13-CV-920, and No. 14-CV-1043. Dkt. Nos. 6, 8. The case was subsequently assigned to Hon. Frederick J. Scullin. Dkt. No. 16. However, the relation order was subsequently vacated and the cases deemed unrelated. Dkt. No. 29.